We'll next hear the case of United States v. Malone, 18-3213. Counsel, you may proceed. Good morning. My name is Dean Sandiford, and I'm here for Ashton Malone. There's only one issue in this case, and it has to do with a condition of supervised release. The district court imposed a condition that required Mr. Malone to take any medication he's prescribed during the course of mental health treatment on supervised release. That condition intrudes on Mr. Malone's right not to be forced to take unwanted psychotropic medication, so to impose the condition, the court had to make particularized findings that there was a compelling need for it. The district court didn't make those findings, and this court should therefore vacate the condition in remand. That's the essence of our argument, and I would like to turn now... Are we on plain error review? Well, there's a dispute about that between the parties. I admit we're on plain error review because there wasn't an objection. The government argues that there was a waiver, so an intentional relinquishment of a known right as opposed to just excusable neglect. That's based solely on the fact that the court said, I'm going to impose the conditions in Part D of the pre-sentence report, and counsel said he had no objection. That doesn't amount to a waiver of this issue because it doesn't even show an awareness on counsel's part of the need for additional findings. All it put him on notice of was that the court was going to impose the condition. So as a kind of counterexample, if the court had said, I'm imposing this condition, these are my findings, are those findings adequate, and counsel had said, yes, Your Honor, we think those meet the legal standard, we wouldn't be here today. But that's not what happened in our case. I was just going to ask you maybe a practical question that I was curious about. This is such an interesting situation where both of you essentially agree, well, if it were narrowly interpreted or if it had been imposed more narrowly, that would be valid. And broadly, it would be invalid. Right. Both of you substantively are in 100% agreement, as I understand, in Greece. So what I'm curious is, and I don't mean this pejoratively, but why are we here? I mean, why didn't the parties just file a joint motion to the district court and say we jointly move or we have an unopposed motion to modify this condition? It would have been without objection. The district judge would have presumably excluded the possibility of psychotropic medication instead of having an appeal. And I don't mean that critically. I'm just curious. I mean, maybe that could have happened at the district court level. My office, of course, got this case on appeal. There is some dispute between the parties on whether or not the condition can be narrowed. I'm not sure. I mean, I don't want to speak for Mr. Brown, but I'm not sure he would agree even to, I mean, it doesn't sound like anyway from his briefs, a remand for the court to correct it. It wants this court to kind of narrow it on appeal without reforming the judgment itself. I mean, we think that the written judgment should be amended, and you're right. The district court could do that. It could do that on remand. Maybe it could do it in a motion to modify if the government would agree to that. But a decision from this court just narrowing it or just saying it, reading the psychotropic medication piece out of it, really isn't adequate to protect Mr. Malone's interests. We do think the judgment has to be rewritten. But I take your point that there are two ways to get to this same place, but I'm just not sure the parties are in agreement. Mr. Brown, I'm sure, can speak to that as to whether or not he would accept that remedy. That would be fine with us. It accomplishes the same thing exactly as you said. You disagree on waiver. We disagree on waiver. So that's a disagreement. But just going a little further with this, maybe it would be helpful for us. Well, there may be some disagreement on there. Where is the remaining disagreement? After we get past waiver, where are the two sides in conflict or tension or potential conflict? I think it's on the relief. It's on the relief. What we want is it to be sent back for the district court to strike out the medication thing, make clear it's not psychotropic, whereas the government thinks it's enough for this court to do that in a narrowing construction and opinion. We don't think that's sufficient because we don't think that's sufficient guidance for the probation officer when he's back on supervised release. Probation officers go by the written judgment, the conditions that are written by the court, and if those aren't changed, an appellate decision is what the law is, but the probation officer is not necessarily going to know what to do with that. The probation officer is going to walk into the office with the conditions. What's the definition of a psychotropic drug in this context? A psychotropic drug is any drug that affects mental processes and behavior. That's just the generally accepted medical definition of a psychotropic drug. Does it include antidepressants? Yes, it does, and it would include anti-anxiety drugs. Really, another part of the dispute between the parties is whether this could even be narrowed at all. We don't think it could because any medication includes psychotropic medication. This is part of a mental health condition. It speaks about mental health medication. I'm not a doctor, but I'm pretty sure most mental health medication is psychotropic medication in nature. Maybe there's some that's not, but to read that out, I just don't even think it's a possibility because the condition's not ambiguous like it was in Bayer and these other cases that have been relied on. Well, can I press you on that a little bit on Bayer? You know, Bayer does have language. I mean, more than language, it says that a condition can be narrowed when it's ambiguous, when it's broad. But when I look at the condition that was applicable in Bayer, it was broad. I'm not sure I see anything more ambiguous, any ambiguity. Mr. Bayer to submit to a sex offender mental health assessment and a program of sex offender mental health treatment as directed by the probation officer until he's released the probation officer. I'm not sure I see any greater ambiguity in Bayer than I do here. Well, the difference, I think, is that in Bayer the challenges were to particular types of treatment that can take place under the umbrella of sex offender treatment. So, for example, plethysmograph testing. He said, this condition requires me to take plethysmograph testing. And this court said, well, not on its face it doesn't. It's a sex offender treatment. Maybe that could require it, maybe it doesn't. That is an ambiguity because we don't know. This condition is different because it says any medication and it's mental health medication. So I think there is a far greater degree of specificity here when in Bayer that the treatment that they were really complaining about wasn't even written into the condition. It's just something that sometimes happens in the course of the overall treatment program that was imposed by the court. Unless the court wants me to speak more on waiver, ask questions about the waiver forfeiture, I'm happy to reserve the remainder of my time. I don't want to monopolize your time, but I've got another question. Go right ahead, of course. Nobody's argued this, but I was just a little bit curious about it. What about the constitutional avoidance doctrine? Now, there you're talking about interpreting a statute, but we have cases, a lot of cases, that Booker, I suppose, would be one where the Supreme Court has said, well, we've got a statute. It's broad. And in order to prevent it from having unconstitutional ramifications, we're going to construe that narrowly. Without language about really any ambiguity in the statute, is your argument about the necessity of ambiguity, how do we reconcile that with the body of cases involving a constitutional avoidance doctrine? Well, I guess my understanding of the constitutional avoidance doctrine might be a little bit different because I thought it did require some ambiguity. I think the statute is written in a clearly unconstitutional way. The court either has to strike it down or has to strike it down. I do think there's an ambiguity requirement the same way there is for, say, the rule of lenity or something like that, to the extent that I'm wrong about that and certainly could be. But Bayer says for these conditions, ambiguity is required for the narrowing requirement. You know, that's part of this Court's case law. So, you know, whether or not it's required for constitutional avoidance, I think, is fundamentally beside the point because the case law that's directly on point in this context does require ambiguity before a narrowing construction can be done. Okay. You'll have five and a half minutes if you want it. All right. Thank you. Good morning, Your Honors. James Brown for the United States. Your Honors, I'd like to start with the merits and then I'll circle back to the waiver issue if I may. On the merits, the defendant has proposed a remedy of a clerical amendment to the judgment to make clear that the defendant cannot be forced to take psychotropic medication that he doesn't want to take. He proposed that remedy in his reply brief and we would not object to that remedy. It's just a clerical, to make a clerical change to the judgment. What we do oppose is a remand to the district court for any further consideration of the issue. And the reason is because on remand, we always get, what happens in the district court is, nobody ever complies with a mandate rule and nobody ever complies with a remand and you get tons of other issues that just sprout up like flowers in the spring. So we just, a clerical, all the time. Okay. That's interesting. It's true. And, for example, I just had a case where the court remanded for a simple thing and then the defendant decided while he was in jail that he was a sovereign citizen, raised jurisdictional issues, raised the Sixth Amendment denial of counsel issue, and so we have a whole new appeal. Well, I was just going to say, can't the mandate be drafted in such a way to focus in and limit it to this issue? It can and it can. And I don't doubt that this panel would do that. But in many cases, the mandate is drafted in sort of a loosey-goosey way that permits some interpretation, and if there's any window of interpretation, a new issue is going to arise. So we don't object to an order that the judgment be clerically amended to reflect the position. Well, isn't that, in a way, a limited mandate? Well, if the court says for the sole purpose of clerical amendment and nothing else, then that would be fine. But unless it's absolutely crystal clear and absolutely limiting, new issues will arise. So you're saying, Mr. Rand, that you do not object to us entering an order saying we are remanding for the district court to amend the conditions of release on this provision to exclude psychotropic medication? If that issue has not been waived, we do not object to that. So if we apply plain error, you're saying you don't have an objection to that? That's correct. That's correct. And we just ask that the mandate be crystal clear. And if the court even uses the terms other proceedings, as may be appropriate, that's going to give rise to all sorts of new issues in a brand new way. What would be your position if this condition were left in place, but imposing on the district court the requirement to make the specific findings that would be necessary for the condition? What about something like that, as opposed to a narrowing or clerical change? Well, the court could do that. We've not requested that. The defendant has not requested that. And we're not saying that it should be remanded for additional or new findings. We want the case to end, and we think that it can end if the court just makes the clerical amendment to the judgment. Let me ask you, this is kind of a broader question, but I noticed in another case the same condition was imposed. And so I started to wonder, is this a stock condition that's being used these days? At first I thought maybe this was something tailored to this case, but now I'm wondering if this is something that the court's more routinely using. I think it's a stock condition that's been used for a long time, but now you have a new challenge to that condition. And this is the new challenge, and the trend for the past few years is to challenge the conditions of supervised release, and this may be part of that trend, but it's been a stock condition. Well, isn't it, I mean, maybe this is or isn't the case to clarify that it's an improper condition, but it's not just that there's this new wave of defense attorneys challenging supervised release conditions. We now have the aftermath of United States v. Sell, which the Supreme Court has been unequivocal in saying that it is a significant, unwarranted intrusion in one's liberty interest to involuntarily medicate someone for the purpose of restoring competency. And here we have a standard condition that is presumably being used in virtually all impositions of supervised release to say you can do it just if a psychologist gives you the strongest psychotropic medication possible. Yeah, you have to take it. He's not going to have a right to have defense counsel, so if we don't have this clearly amended and forget what the probation officer says, the defendant, I mean, this is an important issue, and it's an important problem, and it's exacerbated by the fact that it's not a special condition, it's a standard condition. So I don't know what question is from that, but I suppose it is, isn't it particularly critical that this court do something to say, on its face, read literally, this is a complete violation of the 14th Amendment? Well, we acknowledge that the defendant has a significant liberty interest in avoiding the administration, the involuntary administration of psychotropic drugs. The Sell case, which the court referred to, basically supports that. It's really hard to imagine any findings that the court can make at a sentencing hearing knowing that supervised release conditions will come into play several years down the line saying I'm authorizing this in advance, these administration of psychotropic drugs, without any due process. So we understand that. If the court wants to make that statement, the court can make that statement. We don't know that this is the case. We just think the judgment could be amended. But as Judge Matheson said, we have another case, I have another case, the United States v. Hague case where the same condition is at issue, and we're going to have to come up with a response or else the government's going to have to alert people to the fact that this is a problem and either get the findings or not ask for the condition. Is it fair to say that you concede, and I'm not trying to put words in your mouth, Mr. Brown, but do you concede that read literally this condition is a violation of 14th Amendment? I don't think we're prepared to make that concession today. We acknowledge that the defendant has a significant liberty interest at stake, and we do acknowledge that just imposing a condition of supervised release that would deprive defendant or impinge upon that liberty interest at some indeterminate time in the future probably doesn't meet constitutional standards, but I don't think we're prepared to make a concession in that regard today. Are antidepressant and anti-anxiety drugs psychotropic drugs? Well, as my colleague talked about, the definite... I had that same question because they're really not the same thing. I mean, antipsychotic drugs are much more powerful than a lot of things that come within antidepressant, if that's what's included inside. Right, and I wish I could... I'm not a doctor, obviously. I wish I could speak to that. I can't. My colleague spoke to that a little bit. I had no reason to question what he said about that. For example, if somebody takes Xanax, is that psychotropic or is that just something to... It's a psychotropic, but it's not an antipsychotic. Right. So, you know, we're not really sure where to draw the line on that, but we think that in this case we just don't have the findings for... that there need to be in order to impose that condition. So that's where we're coming from on that point. I'd like to touch on the waiver issue, if I may. Move to that. We raised the waiver issue because it seems like it should be facially applicable in this case. The court imposed the condition. Let's back up chronologically. The court talked about the condition. It was in Part D of the pre-sentence report. It was there. The court said it intends to impose the condition, referencing the special conditions of supervision, and that included the condition we have here that you must take prescribed medications directed. The court set forth its reasons. It talked about the nature of the offense and the history and the PSR. And then the court asked any objections, and the defendant's counsel said no objections. But don't we have to know that the defendant was aware of this particular liberty interest problem and then determined not to go forward with it, for it to be a waiver as opposed to a forfeiture? Well, that's really what the question comes down to. And this court has stated that waiver occurs where a party deliberately considers an issue and makes an intentional decision to forego it. That's the Cruz-Rodriguez case. There's no indication here that he considered the issue of potential violation of liberty interest from some medication that might be prescribed. That is true. However, there is an indication that he knew he was giving up the issue of taking prescribed medications as directed. It was set forth in the pre-sentence report. He knew that issue was there, and he waived that issue. And that issue necessarily includes the issue that the court referenced. So the question then becomes, for a waiver, how specific do you have to get? Do you have to get to the subsidiary issue, to the subsidiary issue, to the subsidiary issue? Or can you just waive the main issue and thereby waive the subsidiary issues? And I will acknowledge that the defendant does raise a case, the Figueroa-Librata case, in his reply, where the court's reasoning does seem to say that even an obvious objection where the waiver doctrine should be applied shouldn't be applied. So maybe we're just asking for a little clarity. How specific do you really have to get? But here he did waive a condition that says that he has to take medications that are prescribed as directed. And medications includes all medications, and as prescribed as directed includes prescribed medications. It would seem to be that he had notice of the issue and made an intentional decision not to fight about it. Well, you'd agree, though, counsel, that the line between waiver and forfeiture is not always a bright line. We would agree with that. We would agree. And we would just ask the court to consider how specific we really have to get. If you go to the Figueroa-Librata case, that seems a case where the waiver was obvious to us, and the court found it wasn't. Here we think this is sort of an obvious waiver. Yes. I meant to let you finish. How deep you want to drill into the issue that's actually being weighed. And I appreciate your candor in all regards in your advocacy. But the obvious question for us, I think, is on waiver. We're just a panel. We're not the en banc court. We've got Figueroa-Librata. You're very candid about it. Is there any way to distinguish from Figueroa-Librata? That's my hardest question to you. There, the court had an independent. Well, number one, that was a drug quantity case, a drug quantity finding case. And the issue was raised to defense counsel knew about the issue. The government adverted defense counsel to the issue. And defense counsel chose not to object. So he was aware of the issue. And then he didn't object. And then the court said there's still not a waiver. So that would tell us that when do you apply the waiver doctrine if you don't apply it there? So it's really hard to distinguish that. I suppose the court could say that in the Figueroa-Librata case, this court found that the district court had an independent duty to make the drug quantity findings, the particularized drug quantity findings in that case. But then the defendant could say, well, in this case, the district court had an independent duty to make adequate findings to justify the condition. So you can go both ways. But this court's precedents, this court's cases sort of bind us into arguing, because what looks like an obvious waiver is really no waiver at all, which raises the question, what do you have to do? What's obvious about this waiver? There's a reference to Section D, but there's nothing to put the specific condition in front of counsel other than just some incorporation by reference, Section D. Well, and we wonder why an incorporation by reference shouldn't be adequate. I mean, otherwise the court would have to read every line of the PSR and say, do you object to that? At some point you have to take into account the practicalities of a hearing. Well, isn't that what we are actually being asked to do? As a practical matter, was there an intentional relinquishment of this objection to the specific condition? And who's got the burden on that? Well, we think the defendant had deliberately considered the issue. Who has the burden? To show waiver? Yeah. Probably the government. Well, if there's some question then. Even if you read the presentence report here, you wouldn't come up with this issue. You would just see that he was required to take his medications. Right, right. Right, which goes back to the question, how deep in the strata do you have to get to get to the layer, to the issue? I mean, like we say, an issue starts at the top. There's lots of subsidiary issues. And here we drill down to Section 2 or 3, and that wasn't waived. And if that's going to be the court's law, then almost nothing, there's going to be a way to get around the waiver rule every time. So we understand that we're basically bound by the reasoning in Figaro La Braga. We just wanted to bring up our point for the court's consideration. We thank the court for doing that. I have nothing further, and I will yield the remainder with permission of the panel. Thank you. Thank you. I just have a couple of, like three quick points. The first goes to one of your questions, Judge Seymour, about antipsychotics versus psychotropics. Antidepressants, Xanax, those are not antipsychotic drugs, and that's not what our argument is. The right extends beyond antipsychotics to psychotropic drugs, though. So that's what United States v. Mike says. It says it's well established. So I just wanted to clear up any confusion about that. But I don't think it makes any difference for our argument, because psychotropic drugs as a class, antipsychotics are probably a subset of that. They're all included within the right. The second point goes to the stock condition questions. This was a special condition. It's not one of the standard ones that's listed in the guidelines or anything, but it is a stock special condition in the sense that when the mental health condition is imposed, we've seen a few cases out of Kansas, it has this exact same language. So there's this defendant-by-defendant choice about whether to impose the condition, but when it's imposed, it's always this condition. And we've seen it crop up in Colorado, too. So I guess this goes to one of your questions, Judge Bacharach, about whether the court should kind of say something about this, because if you do think it's a problem, we obviously think it's a problem. It's a problem that's more widespread than this one case, and there would be some benefit to saying something more public about it. This third thing, and this is my final thing, is the remand question about, like, opening up the whole rat's nest on remand. We're totally fine with just a narrow mandate that's just to fix the clerical error. We're not asking for a resentencing de novo. We don't have any other issues. And as far as I know, you know, under the remand rule, if the court does a limited remand, then district courts are stuck just to fix what the court of appeals remanded for. So I just wanted to make that clear, too. I'd cede the rest of my time. Thank you. Thank you, counsel. Thanks to both of you for your arguments this morning. The case will be submitted.